## EL PUEBLO, DEMANDANTE Y APELADO, *v.* LLADÓ, ACUSADO Y APELANTE.

No. 2310.—*Visto:* Noviembre 28, 1924.  *Resuelto:* Diciembre 19, 1924.

GRAN JURADO—DERECHOS DEL ACUSADO—SORTEO DEL GRAN JURADO—CITACIÓN DEL ACUSADO PARA EL SORTEO—CUÁNDO ES INNECESARIA.—Cuando el gran jurado hace la investigación de un delito sin sometérsele acusación de un fiscal y encuentra que hay méritos para acusar a determinada persona, puede ordenar como consecuencia de su investigación que el fiscal le presente acusación y endosarla como fundada, sin que dicho acusado haya sido citado para el sorteo de los miembros del gran jurado que ha investigado su caso y sin que tal investigación tenga que ser sometida a otro gran jurado.

HOMICIDIO—EVIDENCIA — OPINIONES DE LOS TESTIGOS. — En este caso el acusado repreguntó a un testigo de cargo: "Si algún testigo antes que usted hubiera dicho que el acusado estaba en el camino de Mabelén y no en el callejón de la central, ¿usted estaría conforme con esa opinión?" *Se resolvió:* que tal pregunta no era admisible.

ID.—PERITO EN ARMAS DE FUEGO.—Un miembro del cuerpo de la policía que se ha ejercitado durante largo tiempo en el tiro al blanco con armas de fuego, está capacitado para declarar si un revólver ha sido disparado o nó recientemente.

ID.—EQUIMOSIS DE LA PIEL—PERITO MÉDICO.—Para probar que una persona presentaba equimosis en la piel a raíz de una lucha cuerpo a cuerpo, el testigo competente es el médico.

ID.—INSTRUCCIÓN SOBRE DUDA RAZONABLE.—Instruyendo sobre duda razonable la corte dijo: "La duda razonable es aquel estado de causa que luego de haberse comparado y considerado sobre todas las pruebas practicadas deja al jurado en aquella condición mental que les impide estar convencidos respecto a la verdad de la acusación." *Se resolvió:* que quizá pudo ser mejor esa instrucción pero no puede concluirse que motive la revocación de la sentencia y la celebración de un nuevo juicio.

ID. — INSTRUCCIÓN SOBRE DEFENSA PROPIA. — Cuando la corte instruye sobre la propia defensa y los requisitos que son necesarios para que exista, no es error el negar al acusado la siguiente instrucción: ''Un ataque con arma mortífera levanta la presunción de la intención de matar, lo que justifica a la persona atacada en el uso de un arma mortífera para defenderse.''

SENTENCIA de *Charles E. Foote,* J. (San Juan, Primer Distrito), condenando al acusado por delito de homicidio voluntario. *Confirmada.*

R. *Díaz Collazo,* abogado del apelante; *José E. Figueras, Fiscal,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR ALDREY, emitió la opinión del tribunal.

Jaime Lladó fué acusado de un delito de asesinato y habiendo sido declarado culpable por un jurado de homicidio voluntario, ha establecido este recurso de apelación cuyo primer motivo es el de haber negado la corte inferior la petición que le hizo para que sobreseyera su caso por el fundamento de que no fué citado para la constitución del gran jurado que endosó la acusación contra él, por lo que quedó privado de poder hacer recusaciones contra todo el gran jurado o contra alguno de sus miembros.

La ley estableciendo el gran jurado en esta Isla, aprobada por nuestra Asamblea Legislativa el 18 de junio de 1919 (p. 303), dispone en su sección 2ª que en cada término judicial la corte, siempre que fuere a su juicio necesario, ordenará la extracción por sorteo de 20 nombres de la lista ordinaria de jurados para que formen el gran jurado que ha de actuar durante el término: la sección 3ª dice que el sorteo del gran jurado se verificará por el secretario de la corte, en sesión pública, con citación del fiscal y de los acusados cuyos casos hayan de someterse a la investigación del gran jurado, con cinco días de anticipación por lo menos a la fecha del sorteo: las secciones 4ª a la 10ª conceden a los acusados citados el derecho de recusar a todos los jurados (*panel*) a determinados jurados: la sección 21 ordena al fiscal que presente al gran jurado todos los cargos por delitos que sean de la competencia de éste, en forma de acu-

sación del gran jurado: la sección 24 autoriza al gran jurado para investigar cualquier delito de su competencia correspondiente a la jurisdicción de la corte de distrito en que actúe, aunque el cargo no haya sido presentado por el fiscal: en la 25 se dice que si el gran jurado encontrare motivos para acusar en cualquier caso, endosará la acusación presentada por el fiscal, y que si éste no hubiera presentado acusación el gran jurado le ordenará que la formule, y una vez formulada la endosará en la forma correspondiente: y en la sección 52 se dispone que la acusación será sobreseída por el tribunal mediante moción del acusado presentada al leérsele la acusación, entre otros casos, cuando no se hubiera sustanciado, endosado o presentado de acuerdo con las disposiciones de la ley.

El delito que se imputó al apelante fué cometido cuando estaba actuando el gran jurado, a cuyo conocimiento llegó el caso, y fué investigado por dicho cuerpo quien ordenó al fiscal que le presentara acusación y la endosó como fundada. No fué, pues, investigado por el fiscal y por esto el apelante no fué citado para el sorteo del gran jurado, alegando ahora el apelante que sería injusto que en los casos en que el fiscal presenta las acusaciones al gran jurado los acusados tengan derecho a ser citados y a hacer recusaciones y que carezcan de tales derechos cuando es el gran jurado el que hace la investigación por sí mismo sin acusación del fiscal, y que para que no resulte esa injusticia el artículo 25 debe ser interpretado en el sentido de que cuando la investigación la hace el mismo gran jurado su resultado debe ser sometido a otro gran jurado con citación previa del acusado.

No hay duda alguna de que, de acuerdo con los preceptos legales que hemos mencionado, los acusados cuyos casos va a someter el fiscal al gran jurado deben ser citados para el sorteo del mismo y que pueden hacer recusaciones, y que esos derechos no están reconocidos en la ley cuando la investigación la hace el gran jurado, por la sencilla razón de que cuando se hace el sorteo no hay persona acusada que

pueda ser citada. Quizá esa diversidad de derechos no es justa, pero no viola derecho alguno constitucional de los acusados y la legislatura pudo hacer esa distinción. Antes de la ley del gran jurado las acusaciones se presentaban en los tribunales por la sola investigación y criterio del fiscal, y al promulgarse dicha ley se concedió el derecho de recusación del gran jurado solamente a los acusados cuyos casos fueran presentados a dicho cuerpo por el fiscal, mas no a aquellos cuyos casos eran investigados por el mismo gran jurado sin presentación de acusación por el fiscal, quedando así los últimos en la misma situación que estaba cualquier persona antes de esa ley, aunque con la diferencia de que su acusación era consecuencia de la investigación hecha por el gran jurado y del criterio de éste, en vez del criterio del fiscal. En cuanto a que la sección 25 (1919, p. 309) debe ser interpretada en el sentido de que cuando la investigación la hace por sí mismo el gran jurado el resultado de ella debe someterse a otro gran jurado a fin de que el acusado pueda ser citado y hacer recusaciones, nos bastará decir que nosotros no estamos autorizados para agregar a la ley preceptos que ella no contiene, pues dicha sección es terminante al disponer que cuando no se hubiese presentado acusación por el fiscal el gran jurado ordenará a éste que la formule y la endosará, lo que impide que nosotros digamos que deba ser otro gran jurado. En resumen, cuando el gran jurado hace la investigación de un delito sin sometérsele acusación de un fiscal y encuentra que hay méritos para acusar a determinada persona, puede ordenar como consecuencia de su investigación que el fiscal le presente acusación y endosarla como fundada, sin que dicho acusado haya sido citado para el sorteo de los miembros del gran jurado que ha investigado su caso y sin que tal investigación tenga que ser sometida a otro gran jurado.

Otro motivo del recurso se funda en no haber permitido la corte inferior que un testigo del fiscal contestara cierta

pregunta hecha por la defensa del acusado. Ese testigo declaró repetidas veces que vió al acusado cuando iba con unas vacas en un callejón de determinada central y no en el camino de Mabelén, y se le preguntó: "¿Si algún testigo antes que usted hubiera dicho que el acusado estaba en el camino de Mabelén y no en el callejón de la central, usted estaría conforme con esa opinión?"

Es cierto que en el período de repreguntas a los testigos se permite gran amplitud con el fin de conocer las condiciones del testigo en cuanto a su credibilidad, pero la repregunta que no fué permitida no tenía ese propósito sino el de que el testigo expresara su opinión respecto a lo que había declarado otro testigo y por tanto no era admisible, ni aún, como dice el apelante, para hacer resaltar ante el jurado que había una contradicción entre lo declarado por él y por otro testigo, pues es al jurado y no al testigo a quien corresponde considerar si existe tal contradicción y opinar sobre cuál es la verdad.

Se alega también que fué error permitir al testigo Miguel Martínez que declarase como perito en armas de fuego sin que se demostrara debidamente que estaba capacitado como tal perito, y también que no se le permitiera contestar cierta pregunta que se le hizo respecto a si el acusado presentaba equimosis.

El interfecto Miguel Otero murió de un balazo que recibió en la cabeza, teniendo también otro en un muslo, y al serle practicada la autopsia le fué encontrado en un bolsillo del pantalón un revólver Smith con una cápsula disparada.

El testigo Miguel Martínez es el jefe de la policía del pueblo donde el crimen se cometió y declaró que el acusado le manifestó espontáneamente que estando pastando unas vacas en el callejón de Mabelén, perteneciente a la central San Vicente, llegó Miguel Otero a caballo y luego volvió para atrás: que estando el acusado con la mano en el bolsillo, donde tenía una pistola, Otero se tiró del caballo y lo

cogió por detrás entablándose una lucha en la que cayeron al suelo y que allí hizo uso de su pistola logrando asestarle un balazo: que luego logró salir del sitio donde había caído, que era una zanja, y le hizo otro disparo, y que al hacer un tercer disparo la pistola no funcionó porque se le atravesó la bala: que entre él y Otero hubo con anterioridad ciertas palabras porque Otero no quería que pastasen sus vacas por aquel sitio: y que el acusado le entregó la pistola que es de las ordinarias que vienen por correo, la que entregó al fiscal y reconoció en el juicio.

En el curso de su declaración dijo también ese testigo que es experto en balines: que examinó el revólver Smith y llegó a la conclusión de que no fué usado el día que fué herido Otero: que tiene trece años en la policía, ha hecho mucho ejercicio al blanco y ha estudiado armas: que después de tirar al blanco con su revólver ha procedido a ver el efecto que ha producido en el arma y puede distinguir perfectamente cuándo el disparo de un arma es reciente y cuándo no lo es: que en los disparos recientes presenta olor a pólvora y si se le mete cualquier cosa, un pedazo de estopa, sale impregnado de la pólvora y el revólver presenta más limpieza que si hubiera habido tiempo que no se disparara con él y que en cuestiones de pólvora no tiene experiencia y no sabe química. En estas últimas manifestaciones de ese testigo se funda el apelante para alegar que no estaba capacitado para declarar como perito.

Entendemos que en vista de todas las manifestaciones del testigo sobre su conocimiento de pistolas y de armas parecidas, él estaba capacitado para declarar como perito que el disparo que tenía el revólver Smith encontrado al interfecto no era reciente sino antiguo; pero, aunque así no fuera, importaba poco en este caso que fuera reciente o nó el disparo de ese revólver toda vez que nadie ha declarado en el juicio que Otero hiciera disparo alguno contra al apelante.

También dicho testigo dijo en su declaración que el acusado estaba muy nervioso cuando lo detuvo: que tenía la camisa desgarrada, viéndosele la carne, que él le enseñaba y se la cogía y la apretaba, con cuyo motivo se coloreaba la piel, la que tenía simplemente irritada y que no le vió herida. A ese testigo se le hizo la siguiente repregunta que fué negada por la corte: "Usted ha visto muchos personas a raíz de una pelea, en el curso de sus funciones como policía insular, usted ha intervenido en riñas, etc., y la ha podido apreciar: estas equimosis que tenía el acusado * * * " Alega el apelante que esta repregunta era pertinente porque su propósito era demostrar al jurado que el testigo se contradecía porque había declarado que el acusado simplemente tenía irritada la piel y porque no requería una contestación pericial. Si el acusado tenía o nó equimosis es cuestión que debía probarse por perito médico por ser la manera en que pudo ser contradicha la declaración del testigo en cuanto a si la piel estaba simplemente irritada o presentaba equimosis, pues el significado de esta palabra no es de conocimiento general de los testigos, y en efecto esa prueba de perito fué presentada por el acusado por lo que no existe el error que se atribuye a la corte.

Réstanos considerar el último error alegado y que hace referencia a las instrucciones que la corte dió al jurado y a otra propuesta por el acusado y que la corte negó.

La única instrucción que se ataca es la que fué dada sobre duda razonable, que dice así: "La duda razonable es aquel estado de causa que luego de haberse comparado y considerado sobre todas las pruebas practicadas deja al jurado en aquella condición mental que les impide estar convencidos respecto a la verdad de la acusación." Quizá pudo ser mejor esa instrucción pero no podemos decir que motive la revocación de la sentencia y la celebración de un nuevo juicio.

La instrucción pedida por el acusado y que la corte negó

es la siguiente: "Un ataque con arma mortífera levanta la presunción de la intención de matar, lo que justifica a la persona atacada en el uso de un arma mortífera para defenderse."

No fué error de la corte el negar esa instrucción porque el juez instruyó ampliamente en ese respecto al jurado en cuanto a la propia defensa y a los requisitos que son necesarios para que exista.

*La sentencia apelada debe ser confirmada.*